# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**KURT KUSHNER,**

      **Plaintiff,**

                                        **Civil Action 2:17-cv-715**
                                        **Judge Algenon L. Marbley**
      **v.**                                 **Magistrate Judge Chelsey M. Vascura**

**NATIONWIDE MUTUAL INSURANCE
COMPANY,** *et al.***,**

      **Defendants.**

## OPINION AND ORDER

Plaintiff, Kurt Kushner ("Plaintiff"), brings this action pursuant to the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1001 *et seq.*, against his employer, Nationwide Mutual Insurance Company ("Nationwide"), as well as the administrator of the Nationwide Retirement Plan (the "Plan") under which Plaintiff seeks benefits, the Administrative Committee (the "AC"). This matter is before the Court for consideration of Plaintiff's Motion to Compel Production of Documents Listed on Defendants' Privilege Log, or in the Alternative, for *In Camera* Inspection and to Compel Complete Answers to Certain Interrogatories (ECF No. 28), Defendants' Opposition (ECF No. 29), and Plaintiff's Reply (ECF No. 30). For the reasons that follow, Plaintiff's Motion is **GRANTED in part and DENIED in part**, as set forth herein. Also before the Court is Plaintiff's unopposed Motion to Extend Case Schedule. (ECF No. 38.) For good cause shown, Plaintiff's Motion is **GRANTED**. The parties shall complete all discovery **on or before OCTOBER 18, 2018**. Dispositive motions shall be filed **on or before NOVEMBER 19, 2018**.

# I.

**A. Relevant Factual Background**

According to the Amended Complaint, Plaintiff became a sales agent on an independent contractor basis for Nationwide on July 1, 1998. (Am. Compl. 2, ECF No. 35.) On February 17, 2003, Plaintiff became an employee of Nationwide in the position of Agency Financial Product Wholesaler or Regional Marketing Director. Upon starting this new position, Plaintiff became eligible to participate in the Plan, an account balance defined benefits plan. In early 2004, Nationwide sent Plaintiff a personalized account statement containing a summary of his estimated accrued monthly retirement benefits. The statement reflected that Plaintiff was 100% vested in the Plan as of December 31, 2003.

Plaintiff alleges that when he received this personalized account statement, he contacted Nationwide's Associate Service Center to question why he was already 100% vested in the Plan when he had just become eligible to participate in the Plan as of February 2003. Plaintiff alleges he was told that his years as a sales agent counted toward his eligibility and benefits calculations under the Plan. Each year thereafter for the next ten years, Nationwide sent Plaintiff a personalized account statement and summary of his estimated accrued monthly benefits, with each such statement again reflecting that Plaintiff was 100% vested in the Plan as of December 31, 2003. These statements estimated that Plaintiff's monthly retirement benefits if he worked through his normal retirement date would be between $6,000 to $7,000.

In October 2014, Nationwide switched service providers for the Plan. In reviewing the new provider's website, Plaintiff noticed inconsistencies regarding his hire date and date of service that did not appear in any prior communications he had received. Plaintiff contacted

Nationwide's Associate Service Center and was informed for the first time that his years of service as a sales agent could not be counted toward his eligibility or benefits calculations under the Plan, and that previous statements by Nationwide to the contrary were made in error. Plaintiff's was advised that his estimated benefit if he worked through his normal retirement date would only be approximately $2,000.

These early communications were between Plaintiff and Rick Swinehart, the Director of the Associate Service Center at Nationwide and the individual responsible for initially deciding benefits claims, one of which is particularly noteworthy. In a November 24, 2014 email to Plaintiff, Mr. Swinehart confirmed that the Plan language prohibited counting years as an independent contractor in making eligibility and benefits determinations. Mr. Swinehart informed Plaintiff that the "first step toward a remedy is to file a claim for benefit," which Mr. Swinehart advised "will be sent to me for review and will be denied." (*See* unredacted portion of PRIV 0008.) Mr. Swinehart further informed Plaintiff that in his denial letter, he would "provide [Plaintiff] with [his] formal appeal rights, which will then allow [Plaintiff] to file an appeal with the Administrative Committee," which Mr. Swinehart explained "is required under ERISA prior to pursuing legal action." (*Id.*) Although Mr. Swinehart is responsible for the initial determination on a benefits claim, he is not tasked with deciding an appeal because he is not a member of the AC.

Consistent with Mr. Swinehart's instruction, on November 25, 2014, Plaintiff submitted a claim to the Nationwide Pension Center to restore the benefits set forth in the personalized account statements he had received from 2003 through 2014. As he indicated he would, Mr. Swinehart reviewed and ultimately denied that claim on January 19, 2015, on the grounds that

the Plan prohibited counting years of service as an independent contractor.    On February 19, 2015, Plaintiff timely appealed to the AC.    The AC denied the appeal on May 26, 2015. Having exhausted all administrative remedies, Plaintiff thereafter filed this lawsuit.

### B.  The Current Discovery Dispute

The instant discovery dispute arose following Defendants' production of a privilege log in connection with their responses to Plaintiff's document requests, which reflected that Defendants withheld numerous documents on the basis of the attorney-client privilege or work - product doctrine.[1]    Following meet-and-confer efforts, Plaintiff filed the instant motion challenging Defendants' assertions of privilege and work product on the grounds that the fiduciary exception to the attorney-client privilege and work-product doctrine applies. Defendants dispute that the fiduciary exception applies and maintain that the documents are privileged.    The Court considers the parties' arguments below.

## II.

### A.  Attorney Client Privilege

The attorney-client privilege is recognized as the oldest privilege relating to confidential communications.    *Upjohn v. United States*, 449 U.S. 383, 389 (1981).    Its purpose is to "encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice."    *Id.* The United State Court of Appeals for the Sixth Circuit has articulated the following test to

---

[1] Plaintiff also sought to compel complete answers to two interrogatories, however in their opposition brief Defendants agreed to supply the requested information thereby mooting that request.

determine whether a communication is privileged: "(1) where legal advice of any kind is sought (2) from a professional legal adviser in his [or her] capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his [or her] insistence permanently protected (7) from disclosure by himself [or herself] or by the legal advisor, (8) unless the protection is waived." *Reed v. Baxter*, 134 F.3d 351, 355–56 (6th Cir. 1998) (citing *Fausek v. White*, 965 F.2d 126, 129 (6th Cir. 1992), *cert. denied sub nom. Selox, Inc. v. Fausek*, 506 U.S. 1034 (1992)).

"The privilege is not ironclad, however, and is subject to exceptions." *Moss v. Unum Life Ins. Co.*, 495 F. App'x 583, 595 (6th Cir. 2012). One such exception is the fiduciary exception to the attorney client privilege, which "requires that when an attorney gives advice to a client acting as a fiduciary for third-party beneficiaries, that attorney owes the beneficiaries a duty of full disclosure." *Id.* (citing *In re Long Island Lighting Co.*, 129 F.3d 268, 272 (2d Cir. 1997)). In the context of ERISA, the fiduciary exception dictates that "a fiduciary of an ERISA plan 'must make available to the beneficiary, upon request, any communications with an attorney that are intended to assist in the administration of the plan.'" *Moss*, 495 F. App'x at 595 (quoting *Bland v. Fiatallis N. Am., Inc.*, 401 F.3d 779, 787 (7th Cir. 2005)). "This is because '[w]hen an attorney advises a plan administrator or other fiduciary concerning plan administration, the attorney's clients are the plan beneficiaries for whom the fiduciary acts, not the plan administrator." *Id.* (quoting *Wildbur v. ARCO Chem. Co.*, 974 F.2d 631, 645 (5th Cir. 1992)).

In general, "[t]here are two types of situations where the fiduciary exception should not be applied because counsel's advice to the ERISA plan administrator concerns a non-

administrative or non-fiduciary matter." *Durand v. Hanover Ins. Grp., Inc.*, No. 3:07-00130, 2017 WL 151399, at *13 (W.D. Ky. Jan. 13, 2017). Specifically:

> the exception will not apply to an administrator's communications with an attorney about his or her personal defense in an action for breach of a fiduciary duty. Additionally, the fiduciary exception does not apply to an administrator's communications with plan attorneys regarding non-fiduciary matters, such as adopting, amending, or terminating an ERISA plan. In those situations the attorney-client privilege remains intact for the ERISA plan administrator or fiduciary.

*Id.* (citing *Solis v. Good Emp's Labor Relations Ass'n*, 644 F.3d 221, 227 (4th Cir. 2011)) (internal citations omitted); *see also United States v. Mett*, 178 F.3d 1058, 1063 (9th Cir. 1999) (same). In addition, the fiduciary exception does not apply when an administrator seeks legal advice to "'justify or to defend against a beneficiary's claims made because of an act of plan administration,'" because under those circumstances "'the administrator does not act directly in the interest of the disappointed beneficiary but in his own interest or in the interest of the rest of the beneficiaries.'" *Shields v. UNUM Provident Corp.*, 2007 WL 764298, at *13-14 (S.D. Ohio Mar. 9, 2007) (quoting *Coffman v. Metro. Life Ins. Co.*, 204 F.R.D. 296 (S.D. W. Va 2001)).

To determine whether the plan administrator was seeking legal advice in connection with plan administration and thus in his or her capacity as fiduciary, courts generally look to whether the interests of the fiduciary and the beneficiary had diverged at the time the communication occurred. *See*, *e.g.*, *Moss*, 495 F. App'x at 595-96; *Allen v. Honeywell Ret. Earnings Plan*, 698 F. Supp. 2d 1197, 1202 (D. Ariz. 2010). "[W]hen the interests of the ERISA plan fiduciary and the plan beneficiaries have diverged sufficiently such that the fiduciary seeking legal advice is no longer acting directly in the interests of the beneficiaries but in its own interests to defend itself against the plan beneficiaries, then the attorney-client privilege remains intact." *Tatum v. R.J.*

*Reynolds Tobacco Co.*, 247 F.R.D. 488, 497 (M.D.N.C. 2008).

Courts uniformly hold that the parties' interests of have sufficiently diverged such that the fiduciary exception no longer applies after the final administrative determination has been made or after litigation has been initiated. *See*, *e.g.*, *Moss*, 495 F. App'x at 595, 596 (noting that the exception does not apply "to communications after a final decision" has been made or to communications "generated after the initiation of [a] lawsuit"); *Allen*, 698 F. Supp. 2d at 1202 ("The interests of the plan participants and plan administrators undoubtedly diverge sufficiently upon the final denial of an administrative claim or upon the initiation of litigation."); *Stephan v. Unum Life Ins. Co. of Am.*, 697 F.3d 917, 933 (9th Cir. 2012) (same).

That said, "a sufficiently adversarial relationship may arise before the final decision denying benefits." *Christoff v. Unum Life Ins. Co. of Am.*, No. 0:17-cv-03512, 2018 WL 1327112, at *6-9 (N.D. Minn. Mar. 15, 2018). In addition to the timing of the communications, "[o]ther factors to be considered include evidence that: 1) the threat of litigation was more than a remote possibility; 2) the interests of the beneficiary and ERISA fiduciary had diverged significantly; 3) the documents or communications were not necessary to or relied upon in the administrative claim process; and 4) the documents relate to a settlor function (i.e., amendment of the plan) and were not considered in evaluating the claim at issue." *Klein v. Northwestern Mut. Life Ins. Co.*, 806 F. Supp. 2d 1120, 1132-33 (S.D. Cal. 2011) (citing *Allen*, 698 F. Supp. 2d at 1203). Importantly, however, the mere prospect of potential litigation over a claims decision is insufficient to defeat the fiduciary exception:

> If the Court finds . . . that the pre-decisional legal advice was secured for the purpose of defending against the disagreement and claims of [a plaintiff] in prospective post-decisional litigation against the plan, then it follows that whenever the administration of a plan involves the denial of a beneficiary's claim for benefits

under a plan, all of the pre-decisional legal advice of counsel would be subject to the attorney-client privilege and not available for review by the beneficiaries of the plan, including the disappointed beneficiary. This contradicts the principle that the Plan's Administrator administers the plan in the beneficiaries' best interests. Because denying benefits to a beneficiary is as much a part of the administration of a plan as conferring benefits to a beneficiary, the prospect of post-decisional litigation against the plan is an insufficient basis for gainsaying the fiduciary exception to the attorney-client privilege.

*Lewis v. UNUM Corp. Severance Plan*, 203 F.R.D. 615, 620 (D. Kan. 2001); *see also Geissal v. Moore Med. Corp.*, 192 F.R.D. 620, 625 (E.D. Mo. 2000) (same).

In general, "[t]he burden of establishing the existence of the privilege rests with the person asserting it." *United States v. Dakota*, 197 F.3d 821, 825 (6th Cir. 1999). With respect to the fiduciary exception in the context of ERISA, although "no court appears to have expressly ruled on the question of burden, the majority view appears to be the employer/administrator has the burden of demonstrating counsel's communications concerned non-administrative/non-fiduciary matters or personal representation in potential or pending litigation." *Durand*, 244 F. Supp. 3d at 613. "[T]he Sixth Circuit and several district courts within the Sixth Circuit have . . . followed what appears to be the majority view when addressing the fiduciary exception in ERISA cases," determining that the employer/administrator bears the burden of establishing that the fiduciary exception does not apply. *Id.* (citing *Moss*, 495 F. App'x at 595-96; *Moss v. Unum Life Ins. Co.*, No. 5:09-cv-209, 2011 WL 321738, at *2-5 (W.D. Ky. Jan. 28, 2011); *Shields*, 2007 WL 764298 at *4-5). The Sixth Circuit has recognized, however that "'hard cases should be resolved in favor of the privilege, not in favor of disclosure.'" *Moss*, 495 F. App'x at 596 (quoting *Mett*, 178 F.3d at 1064).

## B. Work-Product Doctrine

"The work-product doctrine is a procedural rule of federal law" governed by Rule 26.

*In re Prof'ls Direct Ins. Co.*, 578 F.3d at 439.   Rule 26(b)(3) provides that "[o]rdinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative . . . ."   Fed. R. Civ. P. 26(b)(3).   As the language of Rule 26 reflects and the Advisory Committee notes confirm, materials can be the subject of the work-product doctrine even if a non-attorney creates them.   *See* Fed. R. Civ. P. 26(b)(3) Advisory Committee Notes, 1970 Amendment ("Subdivision (b)(3) reflects the trend of the cases by requiring a special showing, not merely as to materials prepared by an attorney, but also as to materials prepared in anticipation of litigation or preparation for trial by or for a party or any representative acting on his behalf.").

Whether documents are protected from disclosure under the federal work-product doctrine turns on whether they were prepared in anticipation of litigation.   The Sixth Circuit has offered the following guidance for assessing a party's assertion that a document was prepared in anticipation of litigation:

> To determine whether a document has been prepared "in anticipation of litigation," and is thus protected work product, we ask two questions: (1) whether that document was prepared "because of" a party's subjective anticipation of litigation, as contrasted with ordinary business purpose; and (2) whether that subjective anticipation was objectively reasonable. *United States v. Roxworthy*, 457 F.3d 590, 594 (6th Cir. 2006).   If a document is prepared in anticipation of litigation, the fact that it also serves an ordinary business purpose does not deprive it of protection, *id.* at 598–99, but the burden is on the party claiming protection to show that anticipated litigation was the "driving force behind the preparation of each requested document."   *Roxworthy*, 457 F.3d at 595 (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh v. Murray Sheet Metal Co.*, 967 F.2d 980, 984 (4th Cir. 1992)).

*In re Prof'ls Direct Ins. Co.*, 578 F.3d at 439.   The burden of establishing the existence of the work-product doctrine lies with the person or entity asserting it.   *United States v. Roxworthy*, 457 F.3d 590, 593 (6th Cir. 2006).

Although neither this Court nor the Sixth Circuit has squarely held that the fiduciary exception also applies to the work-product doctrine, other trial courts within the Sixth Circuit, as well as trial courts outside of this Circuit, have. *See*, *e.g.*, *Everett v. USAir Grp., Inc.*, 165 F.R.D. 1, 5 (D.D.C. 1995) (finding that the ERISA fund attorneys may not "shield their attorney work product from their own ultimate clients, the plan beneficiaries . . . insofar as [documents] were prepared in anticipation of litigation on behalf of the plan beneficiaries"); *Durand*, 244 F. Supp. 3d at 617 ("[T]here is no legitimate basis on which to distinguish between the attorney-client privilege and the work product protection when applying the fiduciary exception in the ERISA context."); *Solis*, 644 F.3d at 231-33 (collecting cases applying the fiduciary exception to the work-product doctrine).

### III.

Applying the foregoing standards here, and upon *in camera* review of the disputed documents, the Court concludes that a number of the withheld documents fall within the fiduciary exception to the attorney-client privilege and a number of them do not.

Before turning to the withheld documents, it is important to acknowledge several unique circumstances of this case that affect the Court's analysis. First, although whether a communication occurred before or after the final benefits determination can often be determinative of whether the parties' interests have sufficiently diverged to render the communication privileged, the timing of the communications in this case carries less than the typical weight. Here, it appears undisputed that Nationwide, through Mr. Swinehart, decided it would deny Plaintiff's claim for benefits before Plaintiff even submitted a claim, which renders the timing of the communication vis-à-vis a final benefits determination less relevant. (*See*

10

unredacted portion of PRIV 0008); *See also Carr v. Anheuser-Busch Cos.*, 495 F. App'x 757, 768 (8th Cir. 2012) (ruling that communications that occurred before a final benefits determination were privileged in part because at the time the communications occurred "the final decision to deny benefits had effectively been made"). In fact, Nationwide told Plaintiff *before* he submitted a claim that the claim would be denied, but encouraged him to submit the claim anyway so that he could then appeal to the AC. Nationwide further advised Plaintiff that an appeal to the AC was "required under ERISA prior to pursuing legal action." (*See* unredacted portion of PRIV 0008.) Thus, Nationwide not only knew it would deny Plaintiff's claim before the claim was submitted, but it anticipated Plaintiff would institute litigation following the denial.

Nationwide's anticipation that Plaintiff would sue is important to the instant dispute. Although the Court is mindful that the mere prospect of litigation generally will not signal a divergence in the parties' interests sufficient to dispense with the fiduciary exception to the privilege, *see*, *e.g.*, *Lewis*, 203 F.R.D. at 620, the withheld documents in this case demonstrate that Nationwide reasonably believed that it faced more than a mere prospect of litigation. Unlike a typical denial of benefits, there appears to be no dispute in this case that Nationwide repeatedly made misstatements to Plaintiff regarding his retirement benefits over the course of a decade. Plaintiff alleges that in reliance upon these misstatements, he forwent other, more lucrative employment opportunities over the years. Moreover, the difference in Nationwide's misstated calculations and its subsequent, corrected calculations is not insignificant. Under the circumstances, it was reasonable and prudent for Nationwide to anticipate even in the early stages of the dispute that Plaintiff would institute litigation following the denial of his claim.

11

Further, the context of a number of the communications submitted for *in camera* review demonstrate that Nationwide not only reasonably anticipated that litigation would ensue, but that it took steps early on to strategize and prepare a defense to the litigation. Mr. Swinehart engaged in-house counsel in the dispute almost from the beginning. Nationwide also engaged outside counsel relatively early on to analyze its risk and develop strategy related to the litigation. Thus, even before Plaintiff's claim was denied and his administrative remedies were exhausted, Nationwide engaged in communications with counsel that related not to plan administration, but to Nationwide's defense in the litigation that it reasonably concluded was forthcoming. At that point, the parties' interests had sufficiently diverged such that communications related to the litigation were not made in Nationwide's capacity as Plan fiduciary, but in defense of itself. These communications are privileged, as discussed below, even as other contemporaneous communications between Nationwide and its counsel are not because they relate to plan administration.

Plaintiff contends that the withheld documents cannot be privileged because it appears from Defendants' privilege log that they neither relate to "settlor" functions involving the adoption, modification, or termination of an employee benefit plan, nor to the plan fiduciary's request for legal advice for his or her own personal defense in civil or criminal proceedings. (Pl.'s Mot. 8, ECF No. 28.) The critical question, however, is whether the parties' interests had sufficiently diverged at the time the communication occurred, which it had here for the reasons discussed above. Plaintiff also correctly points out that the "prospect of post-decisional litigation against the plan is insufficient" to dispense with the fiduciary exception. (*Id.*) Given the unique circumstances of this case, however, including Nationwide's repeated and long-

standing misstatements to Plaintiff regarding his retirement benefits, Nationwide faced more than a mere prospect of litigation. Nationwide concluded that litigation would occur, and its conclusion was reasonable under the circumstances.

Defendants insist that all the withheld communications are privileged because the communications did not involve members of the AC or fiduciaries for the subjects discussed in the privileged documents. (Defs.' Op. 3, ECF No. 29.) A review of the communications demonstrates that this is not completely accurate, however, as a number of the communications involve the Recording Secretary for the AC or relate to actions taken by Mr. Swinehart on behalf of the AC, as discussed below. Other communications involved Mr. Swinehart in connection with his review of Plaintiff's initial benefits claim, at which time he was acting as Plan fiduciary.

With this context in mind, the Court now turns to the withheld documents.

## A. Documents that Fall Within the Fiduciary Exception to the Attorney-Client Privilege

The Court concludes that the following documents fall within the fiduciary exception to the attorney-client privilege and must be produced.

**NATIONWIDE 00009-10**: This document consists of a draft correspondence prepared by Mr. Swinehart responding to Plaintiff's initial inquiry of October 20, 2014, regarding his benefits calculations, which Mr. Swinehart emailed to Nationwide's in-house counsel for review. Plaintiff had not submitted a claim for benefits at the time Mr. Swinehart drafted this correspondence, but rather had only just inquired about inconsistencies in dates of service reflected on the new service provider's website. The communication relates to plan administration, specifically the calculation of Plaintiff's benefits under the Plan, and communications by Mr. Swinehart as Plan fiduciary with Plaintiff in that regard. Consequently,

this communication falls within the fiduciary exception to the privilege.

**PRIV 0046-49**: This document consists of a March 19, 2015 email communication from Mr. Swinehart to Nationwide's in-house counsel enclosing a draft memorandum directed to the AC that Mr. Swinehart prepared, along with in-house counsel's response setting forth his thoughts on the draft. Both the email and memorandum demonstrate that Mr. Swinehart drafted the memorandum to assist the AC in its review of Plaintiff's appeal. As such, this communication was generated by Mr. Swinehart in his capacity as fiduciary and pertains to plan administration, and therefore falls within the fiduciary exception to the privilege. *See Klein*, 806 F. Supp. 2d at 1133 (a document is more likely to fall within the fiduciary exception to the privilege if it is relied upon in the administrative claim process).

**PRIV 0050-53**: This document consists of an April 13, 2014 email in which Mr. Swinehart sends a draft correspondence to Nationwide's in-house counsel for review. The draft correspondence was prepared by Mr. Swinehart for the signature of Aurlee Childs in response to Plaintiff's request in his appeal letter for certain employment and benefits documents, and also offers various dates and times that the AC might decide Plaintiff's appeal. Although unclear from this particular communication or from Defendants' briefing, it appears from other documents submitted for *in camera* review that Aurlee Childs was the Recording Secretary for the AC. Thus, the draft correspondence that Mr. Swinehart sent to in-house counsel for review was prepared on behalf of the AC and relates directly to the AC's review of Plaintiff's appeal, namely whether certain documents could be considered in connection with the appeal. As such, this document falls within the fiduciary exception to the attorney-client privilege.

**PRIV 0060-62**: In this April 13-14, 2015 email string, Mr. Swinehart and Nationwide's

14

in-house counsel communicate regarding the draft correspondence set forth in PRIV 0050, including in-house counsel's proposed edits to same. Because the correspondence was written (and therefore being edited) on behalf of the AC and it relates to plan administration, these related communications likewise fall within the fiduciary exception.

In addition to the draft correspondence written on behalf of the AC, PRIV 0060-62 reflects in-house counsel's thoughts regarding additional factors he believed the AC should consider in deciding Plaintiff's appeal. The communication demonstrates that in-house counsel and/or Mr. Swinehart were in communication with the AC concerning Plaintiff's appeal, and suggests that counsel's thoughts would be relayed to the AC for consideration in connection with the appeal. The communication therefore pertains to plan administration and falls within the fiduciary exception.

**PRIV 0056-59**: In this email string, Mr. Swinehart incorporated in-house counsel's proposed edits into the draft correspondence referenced in PRIV 0060-62 and sent the draft to Mr. Childs, with a copy to in-house counsel, directing Mr. Childs to send it to Plaintiff. Mr. Swinehart does not seek legal advice in this email. Merely copying in-house counsel is insufficient to render a communication that neither solicits nor relays legal advice privileged. *See Waters v. Drake*, No. 2:14-cv-1704, 2015 WL 8281858, at *11 (S.D. Ohio Dec. 8, 2015) (quoting *Andritz Sprout-Bauer, Inc. v. Beazer E., Inc.*, 174 F.R.D. 609, 633 (M.D. Pa. 1997) ("'[W]hat would otherwise be routine, non-privileged communications . . . do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda.'"). Even if it were privileged, however, the fiduciary exception would apply for the same reasons it applies to the emails containing a draft of the correspondence, as discussed

above.

**PRIV 0066-72**: This document consists of an email string containing various communications, some of which are privileged and some of which are not. Specifically, the string begins with an April 28, 2015 email from Mr. Swinehart to Nationwide's in-house counsel and other Nationwide employees regarding whether certain documents related to Plaintiff's employment and benefits claim could be located and reviewed in connection with Plaintiff's appeal. Although the AC was charged with reviewing the appeal, the email demonstrates that Mr. Swinehart bore the responsibility of determining whether the documents could be located, a task he undertook on behalf of the AC that relates to plan administration. Mr. Swinehart even offers to communicate information contained in the email to Plaintiff on behalf of Mr. Childs, the Recording Secretary to the AC. Consequently, this initial email falls within the fiduciary exception.

The next communication in the email chain is in-house counsel's response to Mr. Swinehart's email, copying all recipients to the original email. The first two sentences in this email consists of counsel's suggestion that Mr. Swinehart communicate certain additional information to Plaintiff regarding the documents discussed in the previous email, along with information as to when the AC could be expected to consider Plaintiff's appeal. This portion of in-house counsel's email relates to plan administration and is thus not privileged.

Beginning in the second half of the first paragraph and continuing through to the end of the second paragraph of in-house counsel's April 29, 2015 communication, however, counsel relays his mental impressions, strategy considerations, and legal advice relating not to Plaintiff's appeal, but to the litigation that counsel and Nationwide reasonably concluded would follow an

16

adverse determination of the appeal.    This portion of the communication, which begins, "In the meantime," and ends with the second full paragraph in the chain, was written by counsel in connection with Nationwide's litigation defense, not plan administration, and therefore remains privileged.    Defendant may redact this privileged portion from the document before production.

The last email in this string from Mr. Swinehart to Nationwide's in-house counsel, dated May 3, 2015, contains a draft correspondence from Mr. Swinehart to Plaintiff for counsel's review.    The draft correspondence to Plaintiff concerns Plaintiff's request for documents as well as the anticipated date that the AC would decide Plaintiff's appeal.    Nothing in the communication suggests that it involves anything other than the review and processing of Plaintiff's appeal, and therefore it falls within the fiduciary exception and must be produced.

**PRIV 0063 and PRIV 0054-55**: The content of these emails demonstrates they were written by Mr. Swinehart in his capacity as fiduciary and relate to plan administration, namely the timing of the AC's review of Plaintiff's appeal.    These communications therefore also fall within the fiduciary exception to the attorney-client privilege.

**NATIONWIDE 00126-128, NATIONWIDE 00151, NATIONWIDE 00004-08, and NATIONWIDE 000149-150**:    Each of these documents also relates to the review of Plaintiff's appeal and therefore plan administration.    In each email, Mr. Swinehart forwards information to Mr. Childs, the AC's Recording Secretary, directing Mr. Childs to share the information with the AC in advance of the AC's review of Plaintiff's appeal.    Although he copied in-house counsel, Mr. Swinehart does not appear to solicit or obtain legal advice in these communications.    It is therefore doubtful that these email communications could be considered privileged given that merely copying in-house counsel is insufficient to render a communication privileged.    *See*

*Waters*, 2015 WL 8281858 at *11.   Even if the attorney-client privilege did attach, however, these communications would fall within the fiduciary exception.

**PRIV 0083**: In this email Mr. Childs shares information with and seeks input from Mr. Swinehart and Nationwide's in-house counsel regarding the documents the AC intended to review in connection with Plaintiff's appeal.   Mr. Childs was acting on behalf of the AC when he sent this email, and the email relates to the AC's review of Plaintiff's appeal.   It therefore falls within the fiduciary exception and must be produced.

**PRIV 0001-0005**: This document consists of an email string beginning on January 2, 2015, and ending on April 9, 2015.   The first several exchanges in the string are duplicates of the communications contained in PRIV 0011-12 and PRIV 0043-45 and are protected by the attorney-client privilege for the reasons discussed below.   Later in the string, however, on April 9, 2015, Mr. Swinehart forwards the previous email exchanges to Mr. Muntean, a member of Nationwide's human resources team, without including in-house counsel, and the two share a total of three exchanges in which neither of them seeks, obtains, or shares legal advice.   As such, these three exchanges, beginning on April 9, 2015, at 12:33 p.m., are not protected by the attorney-client privilege and must be produced.   Defendants may redact the earlier privileged emails in this string before production.

**PRIV 0100-103**: Although portions of the communications contained in this document fall within the fiduciary exception to the privilege, other portions do not.   The first email in this string is from Nationwide's in-house counsel to other in-house counsel and various Nationwide employees and is a duplicate of PRIV 0097-99.   For the reasons discussed below, this email in the string, which was sent on May 11, 2015, is privileged.

18

Following this initial email, Mr. Swinehart and in-house counsel exchange three additional communications that relate to plan administration and fall within the fiduciary exception to the privilege.   Specifically, Mr. Swinehart's May 15, 2015 email, as well as in-house counsel's response and Mr. Swinehart's reply of the same date, all relate to benefits calculations with respect to other beneficiaries.   Nothing in these exchanges indicates that they were generated for any purpose other than to administer the Plan with respect to other beneficiaries, and thus, they are not privileged.

**NATIONWIDE 136**: Lastly, Defendants' privilege log indicates that they also withheld a document bates labeled NATIONWIDE 136, dated May 14, 2015, consisting of an email from Rick Swinehart to in-house counsel regarding "the audit request."   (Pl.'s Mot. Ex. A, ECF No. 28-2.)   Defendants contend that the privilege log reflects the incorrect bates label, however, and the document at issue actually bears a bates label of NATIONWIDE 146.   (Defs.' Op. 3 at n.2, ECF No. 29.)   Defendants have failed to submit a document with either of these bates labels to the Court for *in camera* review.   The Court notes that Defendants described the at-issue document in their privilege log in the exact same way as they described NATIONWIDE 126, suggesting that the at-issue document relates to the same subject matter as NATIONWIDE 126. If that is the case, then NATIONWIDE 126 also falls within the fiduciary exception to the attorney-client privilege and must be produced.   If Defendants determine in good faith that the at-issue document relates to a different subject matter and that it is privileged, they may submit the document to the Court for *in camera* review for a privilege determination.

Accordingly, Defendants are **ORDERED** to produce to Plaintiff unredacted documents bearing the following bates labels: NATIONWIDE 00009-10; PRIV 0046-49; PRIV 0050-53;

PRIV 0060-62; PRIV 0056-59; PRIV 0063; PRIV 0054-55; NATIONWIDE 00126-28;

NATIONWIDE 00151; NATIONWIDE 00004-08; NATIONWIDE 000149-150; PRIV 0083;

and PRIV 0001-05; as well as redacted versions of documents bates labeled PRIV 0066-72 and

PRIV 0100-103 consistent with this Opinion.

Defendants are further **ORDERED** to determine in good faith whether NATIONWIDE

146, identified as NATIONWIDE 136 on the privilege log, relates to the same subject matter as

NATIONWIDE 126 or whether it otherwise falls within the fiduciary exception to the privilege

given the principles set forth herein, and if so, to produce an unredacted version of the document

to Plaintiff.    If Defendants determine in good faith that the document does not fall within the

exception to the privilege, they may submit it to the Court for *in camera* review for a privilege

determination.

### B.  Privileged Documents

The Court finds that the following documents are privileged.

**PRIV 0008-10, and the redacted portions of NATIONWIDE 00013, NATIONWIDE**

**00023, NATIONWIDE 00034, NATIONWIDE 00079, NATIONWIDE 00081, and**

**NATIONWIDE 00134**.    Consistent with Defendants' reasonable conclusion that litigation

would result from the misstatements giving rise to Plaintiff's benefits claim, Nationwide, through

Mr. Swinehart, involved its in-house counsel as early November 24, 2014.    The context of the

relevant communications indicates that counsel was involved to assist in the preparation of a

defense to the litigation, not with respect to processing or deciding Plaintiff's benefits claim.

To that end, Mr. Swinehart sent in-house counsel various communications and information to

update him of the facts as they continued to develop.    Significantly, at the time these

communications occurred, Nationwide had already determined that Plaintiff's benefits claim would be denied. *See Carr*, 495 F. App'x at 768 (communications after the final decision "had effectively been made" may be privileged even if final benefits determination has not yet issued). Nationwide anticipated, reasonably so, that litigation would result from the denial, and sought counsel's advice in that regard. As such, these documents fall outside the fiduciary exception and are privileged.

**PRIV 0013-0014, PRIV 0011-12, and PRIV 43-45**: PRIV 0013-14 consists of a December 24, 2014 email communication from Mr. Swinehart to Nationwide's in-house counsel setting forth strategic ideas regarding the anticipated litigation, as well as counsel's response. PRIV 0011-12 consists of another iteration of this same communication dated January 2, 2015. PRIV 0043-45 consists of this same communication, which in-house counsel then forwarded to other Nationwide employees with additional information and strategic thoughts for discussion purposes. These emails do not relate to plan administration or the handling of Plaintiff's benefits claim. The context demonstrates that Mr. Swinehart initiated these communications with counsel not in his capacity as plan fiduciary, but as a Nationwide employee attempting to assist in Nationwide's defense of the eventual litigation. Counsel then responded with strategic thoughts related, again, not to Plaintiff's claim, but to the reasonably anticipated litigation. As such, these emails are privileged.

**PRIV 0097-99, PRIV 0064-65, PRIV 0073-74, PRIV 0006-07, PRIV 0075-76, PRIV 0111-113, and PRIV 0093-96**: These documents likewise consist of emails that do not fall within the fiduciary exception to the attorney-client privilege and thus remain privileged. PRIV 0097-99 is a May 11, 2015 email from Nationwide's in-house counsel to Mr. Swinehart and

other Nationwide employees with a copy to other Nationwide in-house counsel that contains information and strategic thoughts related to the anticipated litigation.    It is clear from PRIV 0064 that this email was originally prepared for outside counsel in connection with the anticipated litigation on April 29, 2015.    The context of this and other communications demonstrate that outside counsel was engaged to assist not with plan administration or with a determination on Plaintiff's benefits claim, but rather with respect to the anticipated litigation.[2] PRIV 0064-65 consists of the April 29, 2015 correspondence among Nationwide's in-house counsel discussing the same subject matter, and it remains privileged for the same reasons.

PRIV 0073-74 consists of an email in which in-house counsel's April 29, 2015 communication was forwarded to outside counsel on May 4, 2015, in connection with the reasonably anticipated litigation.    Nationwide's in-house counsel forwarded the same email string to other in-house counsel the next day, and later to another Nationwide employee at PRIV 0006-07 with additional thoughts related to the litigation.    The context of these communications demonstrates that the purpose was still to discuss the litigation, not plan administration or a determination regarding Plaintiff's benefits claim.    Similarly, PRIV 0075-76 consists of an email in which Nationwide's in-house counsel again forwarded the email string to additional in-house counsel and various Nationwide employees on May 11, 2015, with additional thoughts, which was then circulated again by Mr. Swinehart to in-house counsel and Nationwide employees on May 12, 2015, with additional information and strategic thoughts related to the

---

[2] PRIV 0097 also contains a May 15, 2015 response from Mr. Swinehart to in-house counsel that relates to plan administration as discussed above with respect to PRIV 100-103.    For the reasons stated, that portion of the email string is not privileged and must be produced.

litigation. The context of each email in these strings demonstrates that the purpose of the communication was to aid in litigation, not to solicit or provide legal advice related to plan administration or Plaintiff's benefits claim. As such, these communications are likewise privileged. Defendants also assert that these communications consist of work product. Because the information contained within these communications was gathered and prepared because of Nationwide's reasonable subjective anticipation of litigation, the Court agrees. The fiduciary exception does not apply for the reasons discussed above.

**PRIV 0077**: This May 5, 2015 email relays the substance of in-house counsel's discussion with outside counsel regarding the litigation that Nationwide concluded Plaintiff would bring. It does not relate to plan administration or a determination regarding Plaintiff's benefits claim and therefore remains privileged.

**NATIONWIDE 00001**: The redacted email in this string is from Mr. Swinehart to Nationwide's in-house counsel providing information in follow up to a meeting that apparently occurred to discuss the impending litigation. It relates neither to plan administration nor a determination on Plaintiff's benefits claim, and is therefore privileged.

**PRIV 0082, PRIV 0078, PRIV 0092, and the redacted portion of Nationwide 00158**: These communications all relate to strategic issues in connection with the anticipated litigation and are therefore privileged.

**PRIV 0123-25 and PRIV 114-22**: Lastly, these communications and documents relate to a disparate impact analysis prepared at the direction of counsel in August 2017. They do not pertain to plan administration or Plaintiff's benefits claim. These documents are thus privileged.

Accordingly, the withheld portions of the following documents are privileged and not subject to production: PRIV 0008-10, NATIONWIDE 00013; NATIONWIDE 00023; NATIONWIDE 00034; NATIONWIDE 00079; NATIONWIDE 00081; NATIONWIDE 00134; PRIV 0013-0014; PRIV 0011-12; PRIV 43-45; PRIV 0097-99; PRIV 0064-65; PRIV 0073-74; PRIV 0006-07; PRIV 0075-76; PRIV 0111-113; PRIV 0093-96; PRIV 0077; NATIONWIDE 00001; PRIV 0082; PRIV 0078; PRIV 0092; 00158; PRIV 0123-25; and PRIV 114-22.[3]

## IV.

In sum, for the reasons set forth above, Plaintiff's Motion to Compel Production of Documents Listed on Defendants' Privilege Log, or in the Alternative, for *In Camera* Inspection and to Compel Complete Answers to Certain Interrogatories is **GRANTED in part and DENIED in part**, as set forth herein.   (ECF No. 28.)   Specifically, Defendants are **ORDERED** to produce to Plaintiff unredacted documents bearing the following bates labels: NATIONWIDE 00009-10; PRIV 0046-49; PRIV 0050-53; PRIV 0060-62; PRIV 0056-59; PRIV 0063; PRIV 0054-55; NATIONWIDE 00126-28; NATIONWIDE 00151; NATIONWIDE 00004-08; NATIONWIDE 000149-150; PRIV 0083; and PRIV 0001-05; as well as redacted versions of documents bates labeled PRIV 0066-72 and PRIV 0100-103 consistent with this Opinion.   Defendants are further **ORDERED** to determine in good faith whether NATIONWIDE 146, identified as NATIONWIDE 136 on the privilege log, relates to the same subject matter as NATIONWIDE 126 or whether it otherwise falls within the fiduciary exception

---

[3] The Court notes that although Defendants indicated in briefing that they had also withheld a document bates labeled NATIONWIDE 181 as privileged, no document bearing that bates label appears on Defendants' privilege log, in Plaintiff's brief, or within the documents submitted for *in camera* review.

to the privilege given the principles set forth herein, and if so, to produce an unredacted version of the document to Plaintiff.    If Defendants determine in good faith that the document does not fall within the exception to the privilege, they may submit it to the Court for *in camera* review for a privilege determination.

Plaintiff's Motion is **DENIED** with respect to documents bearing the following bates labels: PRIV 0008-10, NATIONWIDE 00013; NATIONWIDE 00023; NATIONWIDE 00034; NATIONWIDE 00079; NATIONWIDE 00081; NATIONWIDE 00134; PRIV 0013-0014; PRIV 0011-12; PRIV 43-45; PRIV 0097-99; PRIV 0064-65; PRIV 0073-74; PRIV 0006-07; PRIV 0075-76; PRIV 0111-113; PRIV 0093-96; PRIV 0077; NATIONWIDE 00001; PRIV 0082; PRIV 0078; PRIV 0092; 00158; PRIV 0123-25; and PRIV 114-22.

In addition, Plaintiff's unopposed Motion to Extend Case Schedule is **GRANTED**. (ECF No. 38.)    The parties shall complete all discovery on or before **OCTOBER 18, 2018**. Dispositive motions shall be filed on or before **NOVEMBER 19, 2018**.

**IT IS SO ORDERED**.

 /s/ *Chelsey M. Vascura*
CHELSEY M. VASCURA
UNITED STATES MAGISTRATE JUDGE