IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| KURT KUSHNER, | : |
| | : Case No. 2:17-cv-00715 |
| Plaintiff, | : |
| | : CHIEF JUDGE ALGENON L. MARBLEY |
| v. | : |
| | : Magistrate Judge Vascura |
| NATIONWIDE MUTUAL INSURANCE COMPANY, ET AL., | : |
| | : |
| Defendants. | : |

## OPINION AND ORDER

### I. INTRODUCTION

This matter is before the Court on several interrelated Motions: (1) Plaintiff and Defendants' Cross-Motions for Summary Judgment; (2) Defendants' Motion to Strike Plaintiff's Cross-Motion for Summary Judgment; and (3) Defendants' Motion for Leave to File a Sur-Reply to Plaintiff's Cross-Motion for Summary Judgment. (Docs. 44, 45, 48, 54.) The Court held a hearing on September 18, 2019. For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Leave to Strike Plaintiff's Cross-Motion for Summary Judgment [#48], **DENIES AS MOOT** Defendants' Motion to File a Sur-Reply to Plaintiff's Cross-Motion for Summary Judgment [#54], and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment [#44].

### II. BACKGROUND

From July 1, 1998 through February 17, 2003, Plaintiff Kurt Kushner worked as an independent contractor who sold products for Defendant Nationwide Mutual Insurance Company ("Nationwide"), including property and casualty insurance, life insurance, annuities, and mutual

1

funds. (Doc. 44-1 at 10-11; Doc. 47 at 10.) On February 17, 2003, Nationwide hired Plaintiff as an employee, giving him the title of Territory Sales Director. (Doc. 47 at 10.) In this new role, Plaintiff participated in the Nationwide Retirement Plan ("NRP"). (*Id.* at 10-11.) Plaintiff did not participate in the NRP prior to this time. (Doc. 44-1 at 11.)

In 2002, Nationwide went through a change, whereby recordkeeping for the NRP was moved from an internal system to Aon Hewitt, a third party. (*Id.* at 13.) To that end, Nationwide sent Aon Hewitt bi-weekly data feeds from its human resources system, which contained information such as employees' date of hire, date of birth, and salary. (*Id.*) Aon Hewitt, in turn, used this information to determine eligibility and calculate benefits under the NRP, as well as to prepare benefits estimates. (*Id.*) When Nationwide sent Aon Hewitt Plaintiff's HR information, Plaintiff's hire date was erroneously recorded as July 1, 1998, the date he began working as an independent contractor, as opposed to February 17, 2003, the date he began working as a Nationwide employee. (*Id.*) It is unclear who or what at Nationwide was responsible for this transmission error, but consequently, Aon Hewitt miscalculated Plaintiff's benefits amount under the NRP, showing he was entitled to a much higher sum than was the reality. (*Id.* at 14.)

In early 2004, Nationwide sent Plaintiff a Total Rewards Statement. (Doc. 47 at 11-12.) The Statement noted Plaintiff's correct hire date, February 17, 2003, and provided that Plaintiff had an estimated accrued monthly benefit of $620, which would be paid out upon his retirement. (Doc. 46-8 at 2-3.) In addition, the Statement specified that Plaintiff was 100% vested in his accrued benefit. (*Id.*) After receiving this Statement, Plaintiff called Nationwide's Associate Service Center to confirm that he was 100% vested in the NRP. (Doc. 47 at 12.) The representative

he spoke with responded affirmatively, stating that the NRP recognized Plaintiff's years of service as an independent contractor. (*Id.*) This, however, was incorrect.[1]

For the next ten years, Plaintiff continued to receive annual Rewards Statements. (*Id.* at 12-13.) Those Statements provided the following estimates:

| Statement Date | Estimated Accrued Monthly Benefit Payable Upon Retirement |
|:---:|:---:|
| 2004/2005 | $1,017 |
| 2005/2006 | $1,169 |
| 2006/2007 | $1,535 |
| 2007/2008 | $1,802 |
| 2008/2009 | $2,264 |
| 2009/2010 | $2,684 |
| 2010/2011 | $3,203 |
| 2011/2012 | $3,520 |
| 2012/2013 | $3,852 |
| 2013/2014 | $4,129 |

(*Id.*) Based on these representations, Plaintiff opted to support his children's college funding without having them take on any debt and he also passed up a job opportunity that would have provided him with more money. (*Id.* at 13.)

---

[1] Despite this misstatement, there is no dispute that Plaintiff is now 100% vested in the NRP. Therefore, the representative's misstatement proved immaterial.

In 2014, Nationwide transferred recordkeeping for the NRP from Aon Hewitt to Fidelity. (Doc. 44-1 at 15.) It was during this transition that Nationwide discovered that Aon Hewitt had been using Plaintiff's incorrect hire date for its benefits calculations. (*Id.* at 16.) Once corrected, it was determined that, as of November 2014, Plaintiff was only entitled to receive $1,327 per month upon retirement, rather than the $4,129 per month reflected in his most recent Rewards Statement. (*Id.* at 17.) Plaintiff subsequently filed a claim with Nationwide's Administrative Committee, also named as a Defendant in this case, for the benefits promised in his Rewards Statements. (Doc. 47 at 15-16.) The Administrative Committee denied Plaintiff's claim in a letter dated May 26, 2015. (*Id.* at 16.)

While the dispute surrounding Plaintiff's retirement benefits was ongoing, Defendants assert that Plaintiff's performance at work began to decline. (Doc. 44-1 at 18-19.) According to Defendants, Plaintiff had underperformed in three categories of sales during the first six months of 2013. (*Id.*) For that sales period, he received a performance rating of 3, or "good." (*Id.*) Plaintiff continued to underperform in several sales categories in 2014, again receiving a performance rating of 3. (*Id.* at 19.) Then, in 2015, Plaintiff's performance rating dropped to 2, or "inconsistent," after he met only 64.1% of his sales goals for a particular product. (*Id.*) This prompted Nationwide to implement performance coaching for Plaintiff in August 2016. (*Id.* at 20.) Plaintiff, however, still failed to meet his sales objectives for that year. (*Id.*) Nationwide eventually placed Plaintiff on final written notice in 2017, warning him that if he failed to meet expectations, his employment might be terminated. (*Id.* at 21.) Plaintiff did meet the goals set out in his final written notice. (*Id.*)

In September 2017, Nationwide underwent a Reduction in Force ("RIF"). (*Id.* at 23-24). This was roughly one month after Plaintiff filed his Complaint in this case. (Doc. 1.) Cynthia

4

Webster -- Associate Vice President of Human Resources at Nationwide -- Joe Manci -- Plaintiff's Regional Sales Manager -- Tom Houle -- Nationwide's National Sales Manager -- and several others were involved in the process of selecting employees for termination in the RIF. (*Id.*) This process involved ranking all 28 Nationwide Territory Sales Directors based, in part, on their historical performance rating; Plaintiff ranked last. (*Id.* at 24.) As a result, Nationwide selected Plaintiff, along with the nine other lowest ranked Territory Sales Directors, for termination. (*Id.*) Plaintiff contends that he was targeted for pursuing his benefits claim. (Doc. 47 at 17).

Accordingly, Plaintiff has raised four claims in his First Amended Complaint, two of which are before the Court.[2] In Count One, Plaintiff alleges Defendants violated ERISA § 502(a)(3) by breaching their fiduciary duty to furnish accurate employee benefits information. Plaintiff also alleges a common law Equitable Estoppel claim. In Count Four, Plaintiff alleges Defendants violated ERISA § 510 by retaliating against him for engaging in protected conduct. (Doc. 35.) Defendants have moved for summary judgment on Counts One and Four. (Doc. 44.) Plaintiff has moved for summary judgment on Count One. (Doc. 45.)

### III. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(a) provides that a court may grant summary judgment if "the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). In resolving a motion for summary judgment, the court must view the facts, and draw reasonable inferences from those facts, in the light most favorable to the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). No dispute of material fact exists where the record "taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus., Co. v. Zenith*

---

[2] Plaintiff voluntarily dismissed Counts II and III of the Complaint. (Doc. 42.)

*Radio Corp.*, 475 U.S. 574, 587 (1986). Ultimately, the court must evaluate "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

## IV. ANALYSIS

Before addressing the parties' Motions for Summary Judgment, the Court must resolve a preliminary matter. Defendants filed a Motion to Strike Plaintiff's Cross-Motion for Summary Judgment, arguing that it was untimely. (Doc. 48.) The Court's Amended Scheduling Order instructed that all dispositive motions needed to be filed by January 31, 2019. (Doc. 41.) Plaintiff did not file his Cross-Motion for Summary Judgment until February 21, 2019. (Doc. 46.)

Without acknowledging his direct violation of the Court's Order, Plaintiff asserts that there is no basis in law to strike his Motion. Plaintiff maintains that, after Defendants filed their Motion for Summary Judgment, it became clear that there were no genuine issues of fact on the elements of his breach of fiduciary duty claim. Thus, under the guise of preserving the Court's resources, Plaintiff argues that the Court should consider his Motion to avoid an unnecessary trial. Plaintiff also argues that the Court has discretion to enter judgment in his favor under Federal Rule of Civil Procedure 56(f), even if he had not filed a Cross-Motion for Summary Judgment. *See* Fed. R. Civ. P. 56(f) ("After giving notice and a reasonable time to respond, the court may: (1) grant summary judgment for a nonmovant; (2) grant the motion on grounds not raised by a party; or (3) consider summary judgment on its own after identifying for the parties material facts that may not be genuinely in dispute.").

Federal Rule of Civil Procedure 6(b) provides that the Court may, for good cause, offer an extension of time "on motion made after the time has expired if the party failed to act because of excusable neglect." Fed. R. Civ. P. 6(b)(1)(B). Here, Plaintiff's untimely Cross-Motion for

6

Summary Judgment is deficient in two respects. First, Plaintiff failed to file a motion seeking leaving for an extension of time. And second, Plaintiff has not attempted to demonstrate excusable neglect for his late filing. *See Crowl v. Norfolk S. Ry. Co.*, 2008 WL 3200620, at *2 (N.D. Ohio Aug. 6, 2008) ("Plaintiff's attempt to bury its Cross-Motion for Summary Judgment in its Opposition to Defendant's timely-filed Motion for Summary Judgment is wholly inappropriate under both the Civil Rules as well as the Scheduling order in this case. To allow a party to raise a motion in this manner would defeat the very purpose of an orderly briefing schedule, including a trial date set with breathing room after the motion cutoff.") (internal quotations omitted). For these reasons, the Court **GRANTS** Defendants' Motion to Strike Plaintiff's Cross-Motion for Summary Judgment [#48] and **DENIES AS MOOT** Defendants' Motion for Leave to File a Sur-Reply to Plaintiff's Cross-Motion for Summary Judgment [#54].

### A. Breach of Fiduciary Duty Claim

Count One of Plaintiff's Complaint alleges Defendants breached their fiduciary duty under ERISA § 502(a)(3) to furnish accurate employee benefits information. ERISA imposes a high standard of fiduciary duty upon administrators of an ERISA plan, including a "prudent person" fiduciary obligation, which requires a plan fiduciary to exercise his or her duties "with the care, skill, prudence, and diligence" of a reasonable person under like circumstances. *Krohn v. Huron Mem'l Hosp.*, 173 F.3d 542, 547 (6th Cir. 1999). In the context of representations by a plan fiduciary to a participant, the Sixth Circuit recognizes an equitable claim under ERISA § 502(a)(3) "when a fiduciary misleads a participant or beneficiary." *See Stark v. Mars*, 518 F. App'x 477, 483 (6th Cir. 2013). "An ERISA fiduciary breaches its duty by making material misrepresentations to a participant, provided that its statements or omissions were made negligently or intentionally." *Id.* (internal quotations omitted); *see James v. Pirelli Armstrong Tire*

7

*Corp.*, 305 F.3d 439, 449 (6th Cir. 2002) ("A fiduciary breaches its duties by materially misleading plan participants, regardless of whether the fiduciary's statements or omissions were made negligently or intentionally.") (internal quotations omitted). Misleading communications regarding plan administration -- e.g., eligibility or extent of benefits under a plan -- will support a claim for breach of fiduciary duty. *James*, 305 F.3d at 449.

To establish a claim for breach of fiduciary duty based on alleged misrepresentations, Plaintiff must demonstrate: (1) that Defendants were acting in a fiduciary capacity when they made the challenged representations; (2) that these constituted material misrepresentations; and (3) that Plaintiff relied on those misrepresentations to his detriment. *Id.* Strictly for purposes of their Motion for Summary Judgment, Defendants do not contest elements two or three. (*See* Doc. 44-1 at 27 n.11.) Still, Defendants maintain that they are entitled to summary judgment because (1) any misrepresentations were based on ministerial or clerical mistakes and (2) the Administrative Committee did not misrepresent information to Plaintiff.

### 1. **Whether Nationwide Was Negligent**

Defendants acknowledge that Nationwide provided Plaintiff with inaccurate Rewards Statements over a ten-year period. Nevertheless, Defendants argue that courts have declined to find a breach of fiduciary duty when such misrepresentations can be attributed to a clerical error.

Defendants rely primarily on the Sixth Circuit's opinion in *Stark v. Mars*, where the court found no fiduciary breach after an employer offered inaccurate benefits information to a plan participant based upon miscalculations provided by a third party. 518 F. App'x at 483-84. There, a third-party database maintaining the employer's retirement plans had a programming error that overestimated the amount of benefits plaintiff stood to receive. *Id.* at 479. The employer, in turn, relied on this misinformation to provide plaintiff with an estimate of her retirement benefits. *Id.*

at 483. In finding no fiduciary breach, the Sixth Circuit emphasized that "[a] plan fiduciary may rely on information, data, statistics or analyses furnished by persons performing ministerial functions for the plan . . . if, in the exercise of ordinary care in such situation, [it] has no reason to doubt the competence, integrity or responsibility of such persons." *Id.* (quoting 29 C.F.R. § 2509.75-8 (FR-11)). Because the employer's misrepresentations were made in reliance on a third party's calculations, and because the employer had no reason to doubt the competence of this third party, the court held that there was no breach of a fiduciary duty. *Id.* at 483-84; *see Sheward v. Bechtel Jacobs Co. LLC Pension Plan for Grandfathered Emps.*, 2010 WL 841301, at *5 (E.D. Tenn. Mar. 4, 2010) ("The mere fact that an error occurred in the calculation of [plaintiff's] benefits is not, in itself, a sufficient basis to support a claim for breach of fiduciary duty.").

Similarly, in *Easa v. Florists' Transworld Delivery Association*, the Eastern District of Michigan found no fiduciary breach where there was no evidence to suggest anyone acting in a fiduciary capacity authorized, participated in, or had knowledge of an employee's mistake in writing an inaccurate benefit amount on a letter that the employer eventually sent to plaintiff. 5 F. Supp. 2d 522, 529 (E.D. Mich. 1998). In reaching that conclusion, the court stressed that the mistake was ultimately attributable to a company employee acting in a ministerial capacity. *Id.*; *see Deschamps v. Bridgestone Americas, Inc.*, 840 F.3d 267, 278 ("[P]urely ministerial functions such as processing claims, applying plan eligibility rules, communicating with employees, and calculating benefits, are not fiduciary functions.") (internal quotations omitted). Further, the court found that there was no evidence the employer "failed to exercise due care" in hiring or training this employee. *Easa*, 5 F. Supp. 2d at 529.

Both *Stark* and *Easa*, upon close review, are inapposite; both can be readily distinguished. First, unlike in *Stark*, the blame for the computation error at issue here does not fall squarely on

9

third party Aon Hewitt. *See* 581 F. App'x at 483. Rather, an error, possibly attributed to Nationwide, resulted in Aon Hewitt receiving Plaintiff's incorrect hire date, which, in turn, led to the miscalculations on Plaintiff's Rewards Statements. Hence, Nationwide's hands are not clean in this instance.

Second, unlike in *Easa*, where the error was clearly attributable to an employee who made a clerical mistake while acting in a ministerial capacity, the same cannot be said here. *See* 5 F. Supp. 2d at 259. Indeed, as Defendants made clear at oral argument, the source and cause of the error in this case is unknown. Importantly, this is information to which only Nationwide would be privy. *See Paul v. Detroit Edison Co.*, 642 F. App'x 588, 594 (6th Cir. 2016) (finding gross negligence where defendants were the only ones in a position to know the true facts, assumed that they knew the true facts, failed to ascertain the true facts when plaintiff specifically asked if the calculations were true, and repeatedly assured plaintiff that they knew the true facts). Without this key information, the Court cannot conclude that this was a mere clerical mistake by someone acting in a ministerial capacity. Therefore, the Court cannot dismiss the possibility that Nationwide failed to exercise due care when it hired or trained the employee potentially responsible for this error; or, if the result of an internal system defect, that Nationwide failed to maintain its operating system.

Plaintiff suffered a wrong at the hands of Nationwide when they provided him with inaccurate Rewards Statements for ten straight years, representing that he was entitled to thousands of dollars more in retirement benefits than was the reality. And where there is a wrong, there must be a remedy. Whether Plaintiff is entitled to a judicial remedy, however, is a question best left for a jury. Accordingly, the Court **DENIES** Nationwide's Motion for Summary Judgment on Plaintiff's Breach of Fiduciary Duty claim.

## 2. The Administrative Committee is not Liable for the Alleged Breach of Fiduciary Duty on the Part of Nationwide.

Defendants note that there are no allegations in Plaintiff's Complaint suggesting that the Administrative Committee made misrepresentations regarding his retirement benefits information. As such, Defendants argue that the Administrative Committee is entitled to summary judgment on this ground. The Court agrees.

ERISA permits a named fiduciary, such as the Administrative Committee, to delegate its fiduciary responsibilities under an employee benefits plan to persons other than itself. 29 U.S.C. § 1105(c)(1). ERISA outlines the limited circumstances in which a named fiduciary can still be held liable for the acts or omissions of its delegate:

> If a plan expressly [permits named fiduciaries to designate persons other than named fiduciaries to carry out fiduciary responsibilities], and pursuant to such procedure any fiduciary responsibility of a named fiduciary is allocated to any person, or a person is designated to carry out any such responsibility, then such named fiduciary shall not be liable for an act or omission of such a person in carrying out such responsibility except to the extent that—
>
> (A) the named fiduciary violated section 1104(a)(1)[3] of this title—
>
>     (i) with respect to such allocation or designation,
>
>     (ii) with respect to the establishment or implementation of the procedure under paragraph (1), or
>
>     (iii) in continuing the allocation or designation; or
>
> (B) the named fiduciary would otherwise be liable in accordance with subsection (a).

29 U.S.C. § 1105(c)(2). Subsection (a), in turn, provides for liability under the following circumstances:

---

[3] 29 U.S.C. 1104(a)(1) provides, in relevant part, that a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries.

> (1) if [the named fiduciary] participates knowingly in, or knowingly undertakes to conceal, an act or omission of such fiduciary, knowing such an act or omission is a breach;
>
> (2) if, by [the named fiduciary's] failure to comply with section 1104(a)(1) of this title in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if [the named fiduciary] has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

29 U.S.C. § 1105(a).

Here, there is no evidence to suggest that when the Administrative Committee delegated to Nationwide the responsibility of furnishing Reward Statements to plan participants, it did so imprudently, or that it knowingly participated in, enabled, or had knowledge of and failed to make reasonable efforts to remedy Nationwide's alleged fiduciary breach. Furthermore, to the extent Plaintiff argues that the Administrative Committee breached its fiduciary duty by not providing him with a Summary Plan Description for the NRP within ninety days of his enrollment, in violation of ERISA §§ 102(a) and 104(b), this claim fails because Plaintiff does not explain how he was harmed by this omission. *See CIGNA Corp. v. Amara*, 563 U.S. 421, 444 (2011) ("[T]o obtain relief by surcharge for violations of §§ 102(a) and 104(b), a plan participant or beneficiary must show that the violation injured him or her."). Accordingly, the Court **GRANTS** the Administrative Committee's Motion for Summary Judgment on Plaintiff's Breach of Fiduciary Duty claim.

### B. Equitable Estoppel Claim

In addition to the Breach of Fiduciary Duty claim, Count One of Plaintiff's Complaint alleges a common law Equitable Estoppel claim. Although Defendants contend that they had no notice of this allegation, Plaintiff's Complaint clearly sets forth the elements of Equitable Estoppel in Paragraphs 45 and 46. (*See* Doc. 35 at 9.)

To establish a claim for Equitable Estoppel, Plaintiff must demonstrate the following elements:

> (1) conduct or language amounting to a representation of material fact; (2) awareness of the true facts by the party to be estopped; (3) an intention on the part of the party to be estopped that the representation be acted on, or conduct toward the party asserting the estoppel such that the latter has a right to believe that the former's conduct is so intended; (4) unawareness of the true facts by the party asserting the estoppel; and (5) detrimental and justifiable reliance by the party asserting estoppel on the representation.

*Deschamps*, 840 F.3d at 273. When an employee benefits plan is unambiguous, Plaintiff must prove three additional elements: (6) a written representation; (7) plan provisions, which although unambiguous, did not allow for individual calculation of benefits; and (8) extraordinary circumstances in which the balance of equities strongly favors the application of estoppel.[4] *Id.* Defendants challenge elements two, three, four, five, and eight. For the reasons that follow, the Court **DENIES** Defendants' Motion for Summary Judgment on this claim.

### 1. Defendants' Awareness of the True Facts

To meet the second element of an equitable estoppel claim, Plaintiff must establish that Defendants were aware of the true facts regarding the misrepresentations in his Rewards Statements. *Id.* at 274. The Sixth Circuit has interpreted this as requiring a showing of either "intended deception or such gross negligence as to constitute constructive fraud." *Id.* (quoting *Paul*, 642 F. App'x at 593) (internal quotations omitted). In the context of ERISA, constructive fraud occurs where there is: "(1) an information asymmetry, such that the defendant is the only one who knows the true facts and the plaintiff cannot ascertain the true facts; (2) the defendant

---

[4] Although the parties disagree as to whether the NRP is unambiguous, it is unnecessary to resolve that dispute at this time, as Defendants are not entitled to summary judgment under either scenario.

misrepresents the benefits to which the plaintiff is entitled; and (3) the plaintiff investigated her benefits and drew a reasonable conclusion about them on the basis of the defendant's misrepresentations, even when the documents the plaintiff relied upon contained a disclaimer that the plan would govern in the event of a conflict." *Pearce v. Chrysler Group LLC Pension Plan*, 893 F.3d 339, 349 (6th Cir. 2018). Also relevant is "whether the defendant took actions to mitigate its misrepresentations and correct the plaintiff's misunderstanding . . . ." *Id.* Therefore, "when an employer ma[kes] an 'honest mistake' and misinform[s] a beneficiary of her benefits, but then repeatedly sen[ds] correction letters in the ensuing months, the employer is not grossly negligent and therefore has not committed constructive fraud." *Id.* (citing *Deschamps*, 840 F.3d at 274-75).

Here, as already discussed, there is a material question of fact surrounding the source and cause of the error that led to the misrepresentations in Plaintiff's Rewards Statements. Without knowing the answer to this question, it would be improper for the Court to usurp the role of the jury in determining whether Defendants' misrepresentations amounted to constructive fraud. This is especially so considering Defendants, and not Plaintiff, were the only ones in a position to know about the misrepresentations in the Rewards Statements.

### 2. Intended Reliance

The third element of an equitable estoppel claim requires Plaintiff to demonstrate that Defendants intended for him to rely on the representations in the Rewards Statements. This requirement can be met where the party asserting estoppel reasonably believed that the representations were intended to induce reliance. *Smiljanich v. GMC*, 302 F. App'x 443, 450 (6th Cir. 2008).

Here, Defendants cannot dispute that one purpose of the yearly Rewards Statements was to give employees an estimate of the benefits they could expect to receive upon retirement. And under ERISA, Defendants had a duty not to mislead Plaintiff. *See Stark*, 518 F. App'x at 483. Given that this duty arises, in part, because plan participants tend to rely on these representations to make future financial decisions, a reasonable juror could conclude that Plaintiff was justified in believing he could rely on these yearly Rewards Statements. Whether it was reasonable for him to rely on their accuracy, however, goes to the question of detrimental reliance under element five.

### 3. Plaintiff's Awareness of True Facts

Under the fourth element of an equitable estoppel claim, Plaintiff must demonstrate that he was unaware of the true facts regarding the misrepresentations in his Rewards Statements. Here, Defendants note that Plaintiff called Nationwide's Associate Service Center in 2004 to ask whether he was truly 100% vested in the NRP and argue that this is evidence he suspected something was amiss. But cutting against this argument is the fact that the representative Plaintiff spoke with provided incorrect information, assuring him that he was 100% vested in the NRP and that the NRP recognized his time as an independent contractor for vesting purposes. A reasonable juror could look at this conversation and conclude that Plaintiff was diligent in investigating the accuracy of his Rewards Statements, and once assured of such, had no reason to question whether his benefits estimates were calculated incorrectly.

### 4. Detrimental Reliance

To meet the fifth element of an equitable estoppel claim, Plaintiff must demonstrate that he relied on the misrepresentations in his Rewards Statements to his detriment. Defendants do not refute that Plaintiff made financial decisions based on the misrepresentations in his Rewards

15

Statements; rather, Defendants argue that this reliance was not reasonable considering they included disclaimers, which warned that the benefits estimates were not guarantees and that Nationwide reserved the right to correct any error. *Cf. Paul*, 642 F. App'x at 594 (finding reasonable reliance even where inaccurate benefits statements included disclaimer language).

Certainly, the inclusion of a disclaimer bears on the reasonableness of Plaintiff's reliance. But as Defendants implicitly acknowledge, the ultimate question is one of fact. (*See* Doc. 52 at 5) ("Fatal to his summary judgment motion, under these circumstances, a fact finder could determine that such reliance was not reasonable.") Given the facts supporting detrimental reliance -- such as the ten-year span of the misrepresentations, Plaintiff's inquiry about the accuracy of the Rewards Statements, and Plaintiff's financial decisions in light of these Statements -- the Court finds that this is a question best left for a jury.

### 5. **Extraordinary Circumstances**

The final element of an equitable estoppel claim requires Plaintiff to demonstrate that the balance of equities warrants estoppel. *See Paul*, 642 F. App'x at 594. Here, a reasonable juror could conclude that extraordinary circumstances exist to warrant estoppel. Most notably, Defendants' misrepresentations were not a one-time error; rather, they occurred repeatedly over a ten-year span. *Cf. Kurtz v. Philadelphia Elec. Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996) (finding no extraordinary circumstances where there was no showing of, among other things, repeated misrepresentations over time); *Stark v. Mars, Inc.*, 879 F. Supp. 2d 752, 771 (S.D. Ohio July 17, 2012) ("This is also not a case where the same misrepresentations were made over an extended period of time, nor was there an unusual number of inquiries by plaintiff.").

16

Still, Defendants cite to *Chewbowski v. Kelsey-Hayes Salaried Pension Plan* in support, where the Eastern District of Michigan held that no extraordinary circumstances existed to warrant estoppel where the plaintiff received incorrect benefits statements over a twenty-year period indicating he was 100% vested in his retirement benefits. 2016 WL 5477335, at *6 (E.D. Mich. Sept. 29, 2016). What Defendants fail to mention, however, is that the court also found that plaintiff failed to demonstrate he was unaware of these errors and that he relied on the benefits statements to his detriment. *Id.* at *5. *Chewbowski* is thus distinguishable on those grounds. *See id.*

In short, a reasonable juror viewing the evidence in a light most favorable to Plaintiff could conclude that the balance of equities warrants estoppel. Accordingly, the Court **DENIES** Defendants' Motion for Summary Judgment on Plaintiff's Equitable Estoppel claim.[5]

### C. Retaliation Claim

Count Four of Plaintiff's Complaint asserts that he was terminated from his job in retaliation for pursuing his entitlement to NRP benefits and filing this lawsuit. Plaintiff, however, has failed to demonstrate that Nationwide's RIF was used as a pretext for his termination.

Under ERISA § 510, it is "unlawful for any person to discharge . . . or discriminate against a participant or beneficiary for [1] exercising any right to which he [or she] is entitled under the provisions of an employee benefit plan . . . or for [2] the purpose of interfering with the attainment of any right to which such participant may become entitled under the plan. . . ." *Hamilton v.*

---

[5] In a footnote, Defendants suggest that the Administrative Committee is the only proper Defendant to the Equitable Estoppel claim because the Committee, and not Nationwide, is responsible for paying benefits in accordance with the NRP. But in *Paul*, the Sixth Circuit upheld an equitable estoppel claim against both the employer and its pension plan. *See* 642 F. App'x at 595.

*Starcom Mediavest Grp., Inc.*, 522 F.3d 623, 627 (6th Cir. 2008) (quoting 29 U.S.C. § 1140). To state a claim for retaliation under § 510, Plaintiff must show that Defendants had a specific intent to violate ERISA. *Id.* at 628. Where, as here, there is no direct evidence of Defendants' motivation, the Sixth Circuit instructs courts to apply a three-part burden-shifting approach. *Id.* First, Plaintiff must establish a prima facie case of retaliation. *Id.* If he does, then the burden shifts to Defendants to articulate a legitimate reason for his termination. *Id.* If that is satisfied, Plaintiff must show that the articulated reason was a pretext for retaliation. *Id.*

For purposes of their Motion for Summary Judgment only, Defendants do not contest that Plaintiff can establish a prima facie case of retaliation. (*See* Doc. 44-1 at 35 n.13.) Hence, the Court turns to whether Defendants have articulated a legitimate reason for Plaintiff's termination. That burden is easily met here, as it is well established that poor job performance constitutes a legitimate, non-discriminatory reason for terminating an employee. *See Smith v. Food Bank of E. Mich.*, 2017 WL 9470711, at *3 (6th Cir. Dec. 8, 2017) (holding poor performance is a legitimate, non-discriminatory reason for terminating an employee); *Todd v. RBS Citizens*, 483 F. App'x 76, 82 (6th Cir. 2012) ("Poor job performance is of course a legitimate rationale for adverse employment actions."). Thus, Plaintiff now bears the burden of showing that this articulated reason was a pretext for retaliation. He has failed to do so.

Plaintiff maintains that Nationwide terminated his employment in response to him pursuing his claim for benefits, not because of poor job performance. (Doc. 47 at 36.) In support, he cites to the Sixth Circuit's decision in *Stein v. Atlas Industries, Inc.*, where the court held that the defendant's failure to follow company policies prior to firing an employee, coupled with the defendant's documented concerns about the employee's skyrocketing healthcare costs, was

enough to create an inference that the defendant fired its employee for a discriminatory reason. *See* 730 F. App'x 313, 322-23 (6th Cir. 2018). Plaintiff's reliance on *Stein*, however, is misplaced.

Critically, Plaintiff points to no evidence demonstrating that Nationwide failed to follow its own standards or company policies prior terminating his employment. To the contrary, Nationwide fired Plaintiff, and nine others, during a RIF and based on poor job performance. Plaintiff does not contest that his performance rating dropped to an "inconsistent" level in 2015 or that he was given performance coaching in 2016 and placed on final written notice in 2017. And, although Plaintiff met the goals set forth in his final written notice, meeting these minimal expectations did not guarantee his job security moving forward.

Alternatively, Plaintiff argues that Joe Manci and Tom Houle, both members of the team responsible for implementing Nationwide's RIF, bore a grudge against him, and that this creates an inference of pretext. Plaintiff presents no evidence to support this notion with respect to Joe Manci. Regarding Tom Houle, Plaintiff references two conversations, both in 2015, where Houle expressed disagreement over whether Plaintiff was entitled to the NRP benefits represented in his incorrect Rewards Statements. But that Houle disagreed with Plaintiff during two conversations *that Plaintiff initiated* several years prior to the RIF, and this lawsuit, does not suggest that he was fired in retaliation for his benefits claim. (Emphasis added).

Finally, Plaintiff argues that because Nationwide refused to revise its proposed severance agreement to carve out his ERISA § 502(a)(3) claim, this establishes pretext. The Court disagrees. This fact does not cast any doubt on Nationwide's stated reason for terminating Plaintiff's employment -- his low performance ranking -- or indicate some ulterior motivation. Other than the timing of the RIF, which alone is insufficient to establish pretext, there was nothing nefarious about Plaintiff's firing. *See Skrjanc v. Great Lakes Power Serv.*, 272 F.3d 309, 317 (6th Cir. 2001)

("[T]emporal proximity is insufficient in and of itself to establish that the employer's nondiscriminatory reason for discharging an employee was in fact pretextual."). Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment on Plaintiff's Retaliation claim.[6]

## V. CONCLUSION

For the reasons stated herein, the Court **GRANTS** Defendants' Motion to Strike Plaintiff's Cross-Motion for Summary Judgment [#48],[7] **DENIES AS MOOT** Defendants' Motion for Leave to File a Sur-Reply to Plaintiff's Cross-Motion for Summary Judgment [#54], and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment [#44].

**IT IS SO ORDERED.**

      /s/ Algenon L. Marbley_____
**ALGENON L. MARBLEY
CHIEF UNITED STATES DISTRICT JUDGE**

**DATED: September 26, 2019**

---

[6] Plaintiff's Retaliation claim was directed only towards Nationwide. (*See* Doc. 47 at 33 n.7.) For this additional reason, the Court **GRANTS** the Administrative Committee's Motion for Summary Judgment on Count Four of the Complaint.

[7] Plaintiff's Cross-Motion for Summary Judgment [#45] is **STRICKEN**.